NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN IVAN SUTTER, M.D., | : | |
| Plaintiff, | : | Civil Action No. 05-2198 (JAG) |
| | : | |
| v. | : | OPINION |
| | : | |
| OXFORD HEALTH PLANS, LLC, | : | |
| | : | |
| Defendant . | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before the Court on the Motion to Vacate an Arbitration Award by Oxford Health Plans, LLC ("Oxford"), the Motion for Stay Pending Transfer by Oxford, and the Cross-Motion to Dismiss by John Ivan Sutter, M.D. ("Sutter"), pursuant to the Federal Arbitration Act ("F.A.A."), 9 U.S.C. § 10. For the reasons set forth below, each of these Motions will be denied.

**INTRODUCTION**

On April 12, 2002, Sutter filed a class action complaint against Oxford and other health insurers in the Superior Court of New Jersey, alleging breach of provider agreements with putative class members in regard to payment of claims, as well as other violations of New Jersey law. Subsequently, the cases were severed as to each defendant. On October 25, 2002, the New Jersey Superior Court granted Oxford's motion to compel arbitration. On December 11, 2002, Sutter and Oxford began arbitration before a single arbitrator, William L.D. Barrett ("Barrett").

On September 23, 2003, the arbitrator rendered a decision in which he concluded that the arbitration clause in the parties' agreement authorized class action arbitration. On March 25, 2005, following the conclusion of discovery, briefing, and oral argument, the arbitrator issued the "Partial Final Class Determination Award" ("Award"). In this Award, which expressly incorporated the 2003 decision, Barrett defined the class of claimants and then certified the class.

On April 25, 2005, Oxford filed the instant Motion to Vacate the Arbitration Award as well as the Motion for Stay Pending Transfer. Oxford stated that it had concurrently filed a "Notice of Potential Tag Along" with the Judicial Panel on Multidistrict Litigation, seeking transfer of this action to the Southern District of Florida for coordination with In Re Managed Care Litigation, MDL No. 1334, pending before that district's court. On May 9, Sutter filed a Cross-Motion to Dismiss under FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## ANALYSIS

**I.     Governing Legal Standards**

    A.     Standard for a Motion to Vacate an Arbitration Award

The Third Circuit restated the highly deferential standard for review of arbitration award decisions in Hruban v. Steinman, 40 Fed. Appx. 723 (3d Cir. 2002):

> The grounds upon which this Court may vacate an arbitration award are "narrow in the extreme." . . . It is not the proper role of the court to "sit as the [arbitration] panel did and reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers."

Id.

Under the F.A.A., 9 U.S.C. § 10(a)(4), a court may grant vacatur of an arbitration award if, *inter alia*, the arbitrator exceeded his powers. The Third Circuit also recognizes a judicially-

created, non-statutory ground for vacatur, i.e., that the arbitrator displayed a manifest disregard of the law.

>The Third Circuit has stated this test for whether an arbitrator has exceeded his powers:
>
>[T]o determine whether arbitrators exceeded their powers, this Court has employed a two-step analysis: (a) the form of the award must be rationally derived either from the agreement between the parties or from the parties' submission to the arbitrators, and (b) the terms of the award must not be "completely irrational."

Hruban, 40 Fed. Appx. at 724. Arbitrators exceed their powers when the award, or some aspect of it, has no rational basis. Brentwood Med. Assocs. v. UMW, 396 F.3d 237, 242 (3d Cir. 2005). In addition, there is a presumption that the arbitrator acted within the scope of his or her authority, and "a court may conclude that an arbitrator exceeded his or her authority [only] when it is obvious from the written opinion." Roadway Package Sys. v. Kayser, 257 F.3d 287, 301 (3d Cir. 2001).

As to the standard for manifest disregard of the law, the Third Circuit has held that courts making such a determination "generally . . . affirm easily the arbitration award." Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003). The Third Circuit has not articulated a test in detail, but has characterized it as "a manifest disregard for the law rather than an erroneous interpretation of the law." Id. In determining whether an arbitrator acted with manifest disregard for the law, most circuits apply this test: "(1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well-defined, explicit and clearly applicable to the case." George Watts & Son v. Tiffany & Co., 248 F.3d 577, 581-2 (7th Cir. 2001) (Williams, J., concurring). See also Brabham v. A.G. Edwards & Sons, Inc., 376 F.3d 377, 382 (5th Cir. 2004) (applying this test). The Eighth

3

Circuit's application of this test requires that the arbitration panel cite the relevant law and then proceed to ignore it. St. John's Mercy Med. Ctr. v. Delfino, 414 F.3d 882, 884 (8th Cir. 2005). Moreover, the Second Circuit holds that "under the test of manifest disregard [the arbitrator] is ordinarily assumed to be a blank slate unless educated in the law by the parties." Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2nd Cir. 2002).

**II.     Subject Matter Jurisdiction**

Sutter argues that this Court lacks subject matter jurisdiction. In the Motion to Dismiss Oxford's Motions to Vacate and Stay, Sutter attacks the three grounds for jurisdiction asserted by Oxford: diversity, federal question, and statutory, under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). Because this Court determines that it has diversity jurisdiction over Oxford's motions, it need not reach the issues of federal question and statutory jurisdiction.

"It is now well established that § 10 of the FAA does not constitute a grant of subject matter jurisdiction. There must be an independent basis of federal jurisdiction before a district court can entertain a motion to vacate under that section. The petitioning party must demonstrate that diversity or federal question jurisdiction exists." Minor v. Prudential Sec., 94 F.3d 1103, 1104-5 (7th Cir. 1996). See also Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1471 (11th Cir. 1997) (observing the "long line of decisions holding that section 10 does not confer subject matter jurisdiction on federal courts").

This Court is granted diversity jurisdiction by 28 U.S.C. § 1332(a). The parties do not dispute that they are of diverse citizenship: Sutter is a citizen of New Jersey and Oxford is a citizen of Minnesota. They dispute only whether the $75,000 amount in controversy requirement of § 1332(a) has been met.

Sutter argues that the threshold is not met because Dr. Sutter's potential damages do not exceed the minimum. This argument fails because the controversy here is defined by Oxford's motion to vacate – not by the underlying dispute in arbitration. The Seventh Circuit examined relevant cases and made the clearest statement of this principle in Minor, 94 F.3d at 1106: "A strong body of caselaw has developed, however, holding that the nature of the underlying dispute is irrelevant for purposes of subject matter jurisdiction."

The Sixth Circuit agreed in Ford v. Hamilton Inv., 29 F.3d 255, 260 (6th Cir. 1994). In Ford, the court began by noting that "[t]he general federal rule has long been to decide what the amount in controversy is from the complaint itself." Id. (internal citation omitted). It then looked to the face of the application for vacatur of the arbitration award filed with the district court, and found that it sought to vacate an award that was under the minimum jurisdictional amount. Id. See also Baltin, 128 F.3d at 1472 (amount in controversy defined by amount of arbitration award petitioner sought to vacate).

Thus, this Court looks not to the amount in controversy in the underlying arbitration, but to the amount of the award stated by Oxford in its application for the motion to vacate. Oxford alleges that the total amount in controversy exceeds $5,000,000, which Sutter does not dispute. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). As Sutter has not questioned Oxford's $5,000,000 figure, and this Court discerns no basis to conclude to a legal certainty that the claim is really for less than $75,000, the amount in controversy requirement of § 1332(a) is satisfied. This Court has subject matter jurisdiction over this matter.

5

In post-briefing letters, the parties debated the application of the recently decided <u>Exxon Mobil Corp. v. Allapattah Servs.</u>, 125 S. Ct. 2611 (2005) to the analysis of diversity jurisdiction in this case.  This Court need not address this matter: <u>Exxon Mobil</u> addressed a different procedural context, one not involving a district court's review of arbitration awards which, as discussed above, requires another approach to the analysis of subject matter jurisdiction.

**III.     Oxford's Motion to Vacate the Arbitration Award**

As a threshold matter, Sutter argues that the two decisions of the arbitrator are interlocutory, not final, and that the F.A.A. restricts a district court's review to final decisions only.  Oxford responds with two arguments: 1) The arbitrator titled the award the "Partial *Final Class Determination Award* of Arbitrator"; and 2) the F.A.A. allows parties to an arbitration to set their own standards for vacatur, which the parties have done in consenting to the AAA Class Supplementary Rules, which allow a motion to vacate this Award.

In <u>Roadway</u>, 257 F.3d at 293, the Third Circuit held that "parties may opt out of the FAA's off-the-rack vacatur standards and fashion their own."  The question, under <u>Roadway</u>, is whether the parties manifested a "clear intent" to do so.  <u>Id.</u>  Sutter argues that Oxford has proffered no extrinsic evidence of such intent to allow review of this Award.  This is not the case.  Oxford has proffered persuasive evidence of a clear intent to adopt review standards that differ from the F.A.A., allowing review at this stage of the arbitration.  The Award states: "The parties agreed in 2004 that the [AAA Supplementary Rules for Class Arbitrations] would govern the future proceedings in this case, including the class determination matters decided in this award."  (De Leeuw Decl. Ex. A 2.)  Rule 5(d) of the AAA Supplementary Rules provides: "The arbitrator shall stay all proceedings following the issuance of the Class determination Award for a period of at

6

least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award." (De Leeuw Decl. Ex. G 2.) In accord with this provision, the Arbitrator concluded the Award with this statement: "[a]s required by the Rules, all proceedings in this arbitration are stayed for thirty days from the date of this award. If the parties proceed to the courts, this stay can be extended as appropriate, either by me or by the courts." (De Leeuw Decl. Ex. A 14.) Thus, the Award appears to have been issued in conformity with Rule 5(d) of the AAA Supplementary Rules, and these rules grant Oxford the right to come to court to move to vacate the award at this time.

      Crucially, Sutter does not claim that it never agreed to the AAA Supplementary Rules. This Court concludes that the parties have demonstrated a clear intent to fashion standards which differ from those set out in the F.A.A.; these standards expressly grant Oxford the right to move to vacate this Award.

      Having determined that this Court has subject matter jurisdiction over this case, and that judicial review of the Award is appropriate, this Court turns to the merits of Oxford's Motion to Vacate the Arbitration Award. Oxford argues that the arbitrator rendered two decisions in which he exceeded his powers and manifestly disregarded the applicable law: the 2003 decision on contract interpretation, and the 2005 decision on class certification which incorporated it.

      Oxford asks that this Court conduct a *de novo* review of the Award. Oxford argues that, as Roadway recognizes the right of parties to fashion their own standards, the parties here have fashioned their own standard of review for the district court: the AAA Supplementary Rules change the district court's standard of review to *de novo*. Oxford, however, overlooks Roadway's

requirement that the parties manifest a "clear intent" to do so.[1]  Roadway, 257 F.3d at 293.  Oxford does not argue that the Supplementary Rules evidence a clear intent to change the standard of review.  Nor does any intent to do so – no less clear intent – appear on the face of the Supplementary Rules.  Provision 5(d), which, as discussed above, grants the parties the right to seek judicial review of this Award, says nothing to characterize the standard of review.  (De Leeuw Decl. Ex. G 2.)  The absence of any statement about how the district court should conduct judicial review supports a finding that no clear intent to change the standard of review has been manifested.

Oxford makes four arguments that the arbitrator exceeded his powers and manifestly disregarded the law.

### A.     The Arbitrator Disregarded Green Tree

Oxford claims that, in making the award, the arbitrator ignored the Supreme Court's holding in Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003), which requires him to construe the contract to determine whether class arbitration is permissible.  Oxford argues that his decision to allow class arbitration contradicts contractual provisions making it impermissible.  This argument is insufficient to state a valid claim that the arbitrator exceeded his powers.  Oxford does not assert that this decision is completely irrational.  Rather, its boldest claim is that "[t]he arbitrator's reasoning is directly contradictory to . . . Green Tree."  (Oxf. Mem. Supp. Mot. Vac. 19).  This fails to state a valid claim that the decision has no rational basis or is completely irrational.

---

[1]Moreover, the Third Circuit has expressly opposed the position Oxford advocates: "it is our duty to resist the urge to conduct de novo review of the award on the merits."  Brentwood Med. Assocs. v. UMW, 396 F.3d 237, 241 (3d Cir. 2005).

Oxford next argues that the arbitrator manifestly disregarded the law in deciding to allow class arbitration. Examination of the Award, in the light of Green Tree, shows that there is no basis for this argument. Green Tree involved a case in which an arbitrator certified a class in arbitration. The trial court confirmed the award, and Green Tree appealed, arguing that class certification was contractually impermissible. The Supreme Court accepted Green Tree's claim that class certification was imposed on the parties by a court, not by the arbitrator, and remanded the case with the order that the arbitrator, not the courts, should decide the question of class certification by interpreting the contract.

There are two reasons to conclude that, here, the arbitrator did not manifestly disregard Green Tree. First, Green Tree is distinguishable on its facts. Here, arbitrator Barrett conducted arbitration proceedings and made the determination to certify a class; he did not certify based only on a court's order. But, more importantly, arbitrator Barrett's decision relies on Green Tree and conforms to its holding. Green Tree holds that the arbitrator must interpret the contract to determine whether class certification is permissible under its terms. On September 23, 2003, Barrett issued an 8-page decision (the "2003 Decision") concluding that the case will be maintained as a class action. (De Leeuw Decl. Ex. A 15-22.) In this decision, Barrett began by observing that he had stayed arbitration proceedings so that the Green Tree decision could be received and analyzed. (De Leeuw Decl. Ex. A 16.) The parties agreed that, under Green Tree, Barrett must determine whether the parties' agreement allows for class action arbitration. (Id.) Barrett began his discussion by examining the holding of Green Tree. (Id. at 16-17.) He observed that, under Green Tree, he must determine whether the parties' agreement allowed for class action arbitration. (Id. at 16.) He proceeded to perform a detailed analysis and interpretation of the

9

agreement, concluding that "the arbitration clause in the Agreement expresses the parties' intent that class action arbitration can be maintained." (Id. at 19.) The March 24, 2005 Award incorporates this decision. (Id. at 2.) Thus, Barrett did exactly what the Supreme Court said in Green Tree an arbitrator must do: interpret the agreement to determine whether the contract permits class certification. Barrett knew about and followed the law. The Award does not support a claim that he disregarded or ignored it.

Moreover, in Green Tree, the Supreme Court did not instruct on the method the arbitrator must use in interpreting the contract. To the contrary, the Court held that interpretation of the arbitration agreement "should be for the arbitrator, not the courts, to decide." Green Tree, 539 U.S. at 453. Oxford, in seeking that this Court impose a contract interpretation on the arbitrator, asks this Court to do what Green Tree says it should not do.

Oxford's argument boils down to a disagreement with Barrett's interpretation of the agreement, cloaked in the incorrect assertion that Barrett disregarded the Supreme Court. This Court will not conduct *de novo* review of the arbitrator's interpretation of the agreement. Under the deferential standard of review that this Court must follow, Barrett's interpretation is reasoned and rational. Oxford has not shown how the interpretation ignores or refuses to apply a clearly applicable rule of law.

Oxford next argues that Barrett disregarded New Jersey law and exceeded his powers by ignoring the parties' intent, as reflected in the contract. This simply repeats the argument that Barrett interpreted the contract incorrectly, and is legally insufficient to state a claim. Oxford neither alleges that the contract interpretation is irrational, nor that the arbitrator ignored a clearly applicable legal principle. The Award relies on the legal principle that Oxford states, that New

10

Jersey requires enforcement of the parties' shared intent as evidenced in the contract. As discussed above, Barrett based his decision to allow class action arbitration on an interpretation of the contract performed so as to enforce the parties' shared intent. Oxford's argument is defeated by the plain language of the 2003 Decision.

      B.      The Arbitrator Disregarded Klay

Oxford next argues that the arbitrator disregarded the decision in Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir. 2004), cert. denied, 125 S.Ct. 877 (2005). In so doing, Oxford makes lengthy arguments that lead this Court through *de novo* review of the Award. Following the guidance of the Third Circuit in Brentwood, 396 F.3d at 241, this Court will resist Oxford's urging to do so. Instead, this Court shall evaluate Oxford's argument under the "manifest disregard for the law" standard, and finds it has no merit. Barrett devoted three pages of the Award decision to discussion of the application of Klay. (De Leeuw Decl. Ex. A 3-5.) Rather than ignoring Klay, Barrett paid careful attention to it: "[Klay] cannot be disregarded. Mindful of this principle, I have read and re-read the Klay opinion. After careful consideration, I cannot agree with Oxford that it applies to this case as controlling precedent." (Id. at 4.) Barrett next explained in detail why he concluded that it was inapplicable to the facts of this case. This Court finds no basis to conclude that the arbitrator manifestly disregarded Klay.

As noted by Barrett, Oxford argues that Klay is binding precedent for the arbitrator. Yet Oxford does not explain how an Eleventh Circuit decision has binding authority in this New Jersey arbitration. Oxford has not shown how Klay is clearly applicable law so as to satisfy that element of the manifest disregard standard.

Oxford also argues that Klay should control under the doctrine of collateral estoppel, as

11

Sutter was a party in <u>Klay</u>. Again, however, Barrett did not manifestly disregard the doctrine of collateral estoppel. Rather, he expressly discussed the doctrine and provided a reasoned explanation for why he concluded that the doctrine did not apply. (De Leeuw Decl. Ex. A 5-6.) Again, this Court will not conduct a *de novo* review of Barrett's decision on this issue. Barrett stated that, under New Jersey law, collateral estoppel is an equitable doctrine, requiring a judgment of fairness. (De Leeuw Decl. Ex. A 6.) Oxford does not dispute that this is a correct statement of applicable law. Barrett made an equitable determination and explained his reasoning. (<u>Id.</u>) As Barrett did not manifestly disregard either <u>Klay</u> or the law of collateral estoppel, Oxford's argument has no merit.

   C.  <u>The Arbitrator Failed to Perform the Required Predominance Analysis</u>

  Oxford next argues that the arbitrator manifestly disregarded the law and exceeded his powers by refusing to perform the predominance analysis required by AAA Supplementary Class Rules 4(b) and 5(a). This argument rests on Oxford's mischaracterization of 4(b), which states: "An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . ." (De Leeuw Decl. Ex. G 2.) Oxford argues that 4(b) requires the arbitrator to identify the individual issues and weigh them against the common issue, but that reading is contrary to the plain language of the rule. The rule requires the arbitrator to make a finding that common questions predominate, not to state a particular predominance analysis. In the Award, Barrett specifically addressed the requirements of Rule 4(b), articulating his finding that common questions predominate and laying out the reasons for this determination. (De Leeuw Decl. Ex. A 11-12.)

Rule 5(a) does not help Oxford either: "The arbitrator's determination concerning whether an arbitration should proceed as a class arbitration shall be set forth in a reasoned, partial final award . . . which shall address each of the matters set forth in Rule 4." (De Leeuw Decl. Ex. G 2.) Again, Barrett followed this mandate. He articulated the reasoning for his determination that common questions predominated and addressed each of the matters set forth in Rule 4. (De Leeuw Decl. Ex. A 11-12.) Rather than disregarding either Rules 4(b) or 5(a), Barrett followed them to the letter. There is no basis for this Court to conclude that the arbitrator disregarded the pertinent

 mandates.

       D.       The Arbitrator Disregarded Sutter v. Horizon

Lastly, Oxford argues that the arbitrator exceeded his powers and disregarded the law by refusing to follow the New Jersey Superior Court case of Sutter v. Horizon Blue Cross, No. L-3685-02 (N.J. Super. Ct. 2004), in which, it alleges, the court denied class certification to (the same) Sutter under similar facts. Oxford maintains that the arbitrator should have held that Horizon, under the principle of collateral estoppel, bars class certification. As above, Oxford has not even stated a claim that the arbitrator exceeded his powers since it has not alleged that Barrett was completely irrational in this matter. As to manifest disregard of the law, Oxford's argument is unpersuasive. Oxford has not explained how the principle of collateral estoppel was clearly applicable to the case. Moreover, Barrett considered the relevance of Horizon and the issue of collateral estoppel, and decided that he had "equitable discretion under New Jersey law not to apply collateral estoppel." (De Leeuw Decl. Ex. A 6.) As discussed above, Oxford has offered no legal basis for this Court to conclude that the arbitrator was even incorrect as to his equitable

13

discretion under New Jersey law, no less that he manifestly disregarded such law. Barrett recognized the law, and provided a rational explanation for why he declined to apply it. (Id.) Oxford has not provided a complete argument, no less a persuasive one, that the arbitrator manifestly disregarded the law.

**IV.     The Parties' Remaining Motions are Now Moot**

This Court's ruling that Oxford's Motion to Vacate the Arbitration Award is denied renders moot the two remaining motions in this case, Oxford's Motion to Stay Pending Appeal, and Sutter's Cross-Motion to Dismiss. Oxford's Motion to Stay Pending Transfer and Sutter's Cross-Motion to Dismiss are denied on grounds of mootness.

## CONCLUSION

For the reasons stated above, Oxford's Motion to Vacate the Arbitration Award is denied. Oxford's Motion for Stay Pending Transfer is denied. Sutter's Cross-Motion to Dismiss is denied.

    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: October 28, 2005