<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN IVAN SUTTER, M.D., | |
| Plaintiff, | Civ. No. 05-2198 (GEB) |
| | Civ. No. 10-4903 (GEB) |
| v. | |
| | **AMENDED**[1] |
| OXFORD HEALTH PLANS LLC, | **MEMORANDUM OPINION** |
| Defendant. | |

<u>**BROWN, Chief Judge**</u>:

This matter comes before the Court upon the following motions filed in Civ. No. 05-2198 (hereinafter, the "'05 Case"): (1) the motion to vacate arbitration award and/or for reconsideration filed by Defendant Oxford Health Plans, LLC ("Oxford"); (2) the cross-motion to confirm arbitration award filed by Plaintiff John Ivan Sutter, M.D. ("Sutter"); and (3) the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Sutter. (Doc. Nos. 31, 38, 42.) And, further, upon the following motions filed in Civ. No. 10-4903 (hereinafter, the "'10 Case"): (1) the motion to dismiss filed by Oxford; and (2) the motion to remand filed by Sutter. (Doc. Nos. 5, 8.) All of the foregoing motions are opposed, and the Court has considered them without oral argument pursuant to Fed. R. Civ. P. 78. Having done so, for the reasons that follow, the Court concludes that federal subject-matter jurisdiction exists in both cases, that the arbitrator's award should be confirmed in the '05 Case, and that Oxford's

---

[1] On February 22, 2011, the Court issued the underlying memorandum opinion in these cases. Therein, the Court misidentified the parties' arbitrator. This amended memorandum opinion corrects that cosmetic error, and makes no other changes. As such, the date of the Court's decision remains February 22, 2011.

motion to dismiss should be denied in the '10 Case.

I.    BACKGROUND

As the Court writes only for the parties, discussion will be limited to the allegations, the facts, and the aspects of these two cases' procedural histories that are relevant to the Court's present decision.

On September 23, 2003, W.L.D. Barrett ("Barrett"), arbitrator in the parties' underlying arbitration, issued a Clause Construction Award that allowed class arbitration pursuant to the parties' arbitration agreement. Thereafter, on March 25, 2005, Barrett issued his "Partial Final Class Determination Award" (the "Partial Award") that, among other things, integrated and gave effect to Barrett's prior Clause Construction Award. Subsequently, on April 25, 2005, Oxford filed a petition in the District of New Jersey to vacate Barrett's Partial Award. That matter, the '05 Case, was assigned to then-District Judge Joseph A. Greenaway, Jr, since elevated to the United States Court of Appeals for the Third Circuit. On May 9, 2005, Sutter opposed Oxford's petition to vacate, and also filed a cross-motion to dismiss the '05 Case based upon Sutter's assertion that subject-matter jurisdiction did not exist.

On October 31, 2005, Judge Greenaway issued an opinion and order that denied both Sutter's motion to dismiss, and Oxford's motion to vacate the Partial Award. In support of that decision, Judge Greenaway concluded: (1) that federal subject-matter jurisdiction exists in this matter pursuant to 28 U.S.C. Section 1332(a), because the parties are diverse and substantially more than $75,000 is at issue; and (2) that under then-controlling precedent, Barrett did not exceed his powers or manifestly disregard the law in the Partial Award. Oxford promptly appealed, and on February 28, 2007, a panel of the Third Circuit affirmed. Following these

rulings, class arbitration proceeded before Barrett in accordance with the Partial Award.

On April 27, 2010, the United States Supreme Court decided *Stolt-Nielsen S.A., ET AL. v. Animalfeeds International Corp.*, 130 S. Ct. 1758 (2010), and therein addressed the issue of class arbitration. In light of *Stolt-Nielsen*, Oxford asked Barrett to reconsider and vacate his prior decisions that allowed class arbitration pursuant to the parties' arbitration agreement. On July 6, 2010, Barrett issued Procedural Order No. 18. ("Order No. 18"), in which he revisited both the Clause Construction Award and the Partial Award, but concluded that class arbitration of the claims at issue remained mandated by the parties' arbitration agreement following the *Stolt-Nielsen* decision.

On August 13, 2010, Oxford moved to reopen this case, and on September 7, 2010, this Court ordered the '05 Case case reopened and reassigned to the undersigned in light of Judge Greenaway's elevation. Also on August 13, 2010, in addition to its motion to reopen, Oxford filed its present motion to either vacate Barrett's July 6, 2010 decision pursuant to provisions of the Federal Arbitration Act ("FAA"), or for reconsideration of Judge Greenaway's October 31, 2005 decision in light of *Stolt-Nielsen*. In response, Sutter filed: (1) opposition to Oxford's motion; (2) a cross-motion to confirm Barrett's July 6, 2010 decision; and (3) a motion to dismiss for lack of subject-matter jurisdiction. Oxford opposes Sutter's motions.

On September 23, 2010, as the parties briefed the various motions filed in the '05 Case, Oxford removed a verified complaint filed by Sutter in Essex County Superior Court, Law Division, to the District of New Jersey. As a result, the '10 Case was opened and assigned to this Court. While both the '05 and '10 Cases arise out of the class arbitration between the parties, the specific issues presented by each case are different. In the verified complaint that frames the '10

Case, Sutter seeks an order to show cause why Barrett's Procedural Order No. 19 ("Order No. 19"), which was issued on July 29, 2010, should not be vacated, apparently pursuant to provisions of the FAA. Less than a week after removing Sutter's verified complaint, and before either Sutter or the Court took further action on Sutter's underlying request for an order to show cause, Oxford filed a motion to dismiss Sutter's verified complaint in the '10 Case. In support of that motion, Oxford argues that: (1) Order No. 19 is not subject to judicial review; and (2) if reviewed by the Court, Barrett's decision should not be vacated. In response, Sutter opposed Oxford's motion, and on November 12, 2010, also filed a motion to remand the '10 Case for lack of subject-matter jurisdiction.

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

Sutter argues that there is no federal subject-matter jurisdiction in either the '05 or the '10 Cases.[2] Fundamentally, Sutter challenges the existence of Section 1332 diversity jurisdiction on the following two bases: (1) that Oxford's citizenship is not diverse; and (2) that the $75,000 amount in controversy requirement is not met. The Court concludes that both arguments are specious for the following reasons.

Nearly six years ago, shortly after Oxford filed the petition to vacate Barrett's Partial Award that gave rise to the '05 Case, Sutter lodged a similar challenge to federal subject-matter jurisdiction in a cross-motion to dismiss. (Doc. No. 5.) In his October 31, 2005 memorandum

---

[2] Sutter makes the identical argument in both the '05 and '10 Cases via two different motions: (1) in the '05 Case, Sutter has filed a motion to dismiss; and (2) in the '10 Case, Sutter has filed a motion to remand. In support of his after-filed motion to remand in the '10 Case, Sutter expressly relies upon his filings in support of his motion to dismiss in the '05 case. The Court's analysis of both motions, therefore, is coextensive.

opinion, Judge Greenaway decided that Section 1332 diversity jurisdiction exists in the '05 Case because: (1) "[t]he parties do not dispute that they are of diverse citizenship: Sutter is a citizen of New Jersey and Oxford is a citizen of Minnesota"; and (2) "as Sutter has not questioned Oxford's $5,000,000 [alleged damages] figure, and this Court discerns no basis to conclude to a legal certainty that the claim is really for less than $75,000, the amount in controversy requirement of Section 1332(a) is satisfied." (JAG 10/31/05 Mem. Op at p. 5; Doc. No. 21) Sutter did not appeal Judge Greenaway's decision that diversity jurisdiction exists in the '05 Case. Further, in affirming Judge Greenaway's October 31, 2005 denial of Oxford's motion to vacate the Partial Award, the Third Circuit did not address subject-matter jurisdiction in any way. As such, the procedural history of this case makes clear that Judge Greenaway explicity, and a panel of the Third Circuit implicitly, determined that diversity jurisdiction exists in this case. In light of these well-reasoned and settled decisions, the Court shall not revisit that determination.

In an abundance of caution, however, the Court will alternately address the grounds upon which Sutter's present jurisdictional motions are based, and explain why those grounds are not sufficient. First, it is apparent from Judge Greenaway's October 31, 2005 memorandum opinion that, in support of his initial challenge to subject-matter jurisdiction, Sutter disputed neither that Oxford was the appropriate party in interest, nor that Oxford's citizenship was diverse. As noted, Sutter did not appeal Judge Greenaway's October 31, 2005 decision. Therefore, Sutter's present, untimely attempt to take a fresh bite at this jurisdictional apple must be rejected. Sutter is plainly estopped from taking a position that he either failed to assume, or to appropriately pursue, in his initial motion to dismiss filed nearly six years ago.

Furthermore, Sutter's second argument, that the $75,000 amount in controversy

5

threshold for diversity jurisdiction is not met, fails for the same reason. Indeed, beyond Judge Greenaway's unappealed and implicitly affirmed prior determination on this point, the Court concludes that the evidence submitted by Sutter in support of his argument does not prove Sutter's point to a legal certainty, as is of course required to defeat diversity jurisdiction in the face of adequately pled damages. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Here, Sutter submitted only the certification of a purported damages expert, which was promptly rebutted by Oxford in its opposition via the submission of an affidavit from its own purported expert. Thus, at most, the parties' submissions have created an issue of fact regarding damages. As noted, that falls far short of the threshold required standard.

For these reasons, as Judge Greenaway correctly noted more than five years ago, "[t]his Court has subject matter jurisdiction over this matter." (JAG 10/31/05 Mem. Op at p. 5; Doc. No. 21) In light of that determination, Sutter's motion to dismiss in the '05 Case, and motion to remand in the '10 Case, will be denied.

**B. Procedural Order No. 18**

The issue that revived the '05 case is Oxford's motion to either vacate Barrett's July 6, 2010 Order No. 18, or alternately, for reconsideration of Judge Greenaway's October 31, 2005 decision to confirm the Partial Award.[3] In support of that motion, Oxford argues that Barrett exceeded his powers when he decided the parties' arbitration agreement allowed for class action arbitration in light of *Stolt-Nielsen*. In response, Sutter opposes Oxford's motion, and in a cross-

---

[3] The Court will not reconsider Judge Greenaway's October 31, 2005 decision, which was subsequently affirmed by the Third Circuit. Instead, the Court will consider in the first instance whether Barrett's Order No. 18 should be vacated pursuant to the relevant provisions of the FAA and related jurisprudence. Thus, the Court will henceforth refer to Oxford's present motion as one to "vacate".

motion, argues that Barrett's decision should be confirmed. The Court agrees with Sutter, and will confirm Barrett's Order No. 18 for the following reasons.

As relevant here, Section 10 of the FAA provides that the district court may only vacate an arbitrator's award, "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. Section 10(a)(4). In *Stolt-Nielsen*, the Supreme Court reinforced the narrowness of judicial review pursuant to this statute. Here, Oxford contends that Barrett's Order No. 18 must be vacated, but for the Court to grant that relief, Oxford "must clear a high hurdle." *Stolt-Nielsen*, 130 S. Ct. at 1767. Indeed, for this Court to vacate, it is not enough for Oxford to show that Barrett "committed an error – or even a serious one." *Id.* (citing *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000); *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Rather, "'it is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision is unenforceable.'" *Id*. (quoting *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504 (2001) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 ( 1960)). "In that situation, an arbitration decision may be vacated under [Section 10(a)(4) of the FAA] on the ground that the arbitrator 'exceeded his powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id.*

Further, "'[t]he Supreme Court has made clear that questions of 'contract interpretation' aimed at discerning *whether* a particular procedural mechanism is authorized by a given arbitration agreement are matters for the arbitrator to decide.'" *Vilches, ET AL. v. The Travelers Cos., Inc., ET AL.*, No. 10-2888, 2011 U.S. App. LEXIS 2551 at *11 (3d Cir. Feb. 9, 2011)

(quoting *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 179 (3d Cir. 2010) (emphasis in original). "Where contractual silence is implicated, 'the arbitrator and not a court should decide whether a contract [was] indeed 'silent' on the issue of class arbitration," and "whether a contract with an arbitration clause forbids class arbitration." *Id.* (quoting *Stolt-Nielsen*, 130 S. Ct. 1771-72).[4]

In light of this standard, the Court will confirm Barrett's Order No. 18, because the Court concludes that Oxford's motion to vacate is fundamentally flawed on at least the following two critical points: (1) the Court's standard of review; and (2) the upshot of *Stolt-Nielsen*. As to the first issue, though Oxford's motion to vacate recites case-law that acknowledges the Court's highly deferential standard of review under the FAA, in substance, Oxford's submissions ask the Court to revisit and reconsider virtually every aspect of Order No. 18. Viewed in sum, Oxford's arguments advocate for a standard that appears closer to *de novo* than deferential review. This confusion may be attributable to the hazy procedural basis for Oxford's motion to vacate, which, as noted, was alternately couched as a motion for reconsideration of Judge Greenaway's October 31, 2005 decision. In any event, the Court concludes that Oxford's motion to vacate is unpersuasive because, for the most part, it is fundamentally out-of-step with the well-established and highly deferential standard of review under the FAA.

---

[4] In *Stolt-Nielsen*, the Supreme Court expressly declined to address the present vitality or efficacy of the so-called "'manifest disregard'" standard. *Stolt-Nielsen*, 130 S. Ct. at 1768, fn 3 (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 553 U.S. 576, 585 (2008)). Similarly, this Court will not engage that issue, but rather, will apply the foregoing, which tracks the standard applied in *Stolt-Nielsen*. For the sake of completeness, however, the Court notes that Oxford's motion plainly fails under any application of the "manifest disregard" standard, as Barrett's Order No. 18 is entirely dedicated to the discussion and application of *Stolt-Nielsen*, the decision that gives rise to this matter and indisputably controls the issue presented.

Furthermore, Oxford appears to misconceive the upshot of *Stolt-Nielsen*. Indeed, Oxford essentially argues that because the parties' arbitration agreement does not state that class action arbitration is allowed, Barrett "exceeded his powers" by not vacating the Partial Award in light of *Stolt-Nielsen*. That interpretation of *Stolt-Nielsen*, however, is not supportable in the present context. While the insertion of the words "class action" to the parties' arbitration agreement would certainly obviate this dispute, as Barrett correctly noted in Order No. 18, *Stolt-Nielsen* does not categorically require the presence of such terms for class action arbitration. To the contrary, in *Stolt-Nielsen*, the Court expressly declined "to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration." *Stolt-Nielsen*, 130 S. Ct. at 1776, fn 10. Here, after giving full consideration to *Stolt-Nielsen*, Barrett concluded that the contractual basis between these parties, i.e. their arbitration agreement, clearly and unambiguously expressed their intent to authorize class action arbitration despite omission of the words "class action". Simply put, *Stolt-Nielsen* does not militate a contrary result. In fact, the Court concludes that Order No. 18 suggests that Barrett performed the appropriate function of an arbitrator under the FAA after *Stolt-Nielsen*; Barrett examined the parties' intent, and gave effect to the arbitration agreement.

In sum, given the highly deferential standard of review applicable in this matter, the Court discerns no basis to overturn Barrett's Order No. 18. Rather, the Court concludes that Barrett thoroughly considered and rationally applied *Stolt-Nielsen* to this complex case. For example, Barrett identified and addressed the following critical issues raised in *Stolt-Nielsen*: (1) the issue of "silence" in the parties' arbitration agreement; (2) the issue of the parties' intent regarding class action arbitration; and (3) the importance of "public policy" determinations to the *Stolt-*

*Nielsen* decision, and the absence of those determinations in this matter. Ultimately, having addressed *Stolt-Nielsen* head-on, Barrett again concluded that the parties' arbitration agreement contemplates class action arbitration. For the foregoing reasons, the Court will confirm that decision. Thus, Oxford's motion to vacate will be denied, and Sutter's cross-motion to confirm will be granted.

### C. Procedural Order No. 19

Finally, as noted, Oxford filed a motion to dismiss Sutter's verified complaint in the '10 Case shortly after Oxford removed that verified complaint from New Jersey state court. Having considered the parties' submissions, the Court will deny Oxford's motion to dismiss without prejudice in the interests of justice and fairness. The verified complaint in the '10 Case requests issuance of an order to show cause why Barrett's Procedural Order No. 19 should not be vacated, apparently pursuant to the FAA. By removing the verified complaint and immediately filing a notice to dismiss, Oxford essentially deprived Sutter of the initiative he sought to gain via the order to show cause in state court. In an effort to avoid any prejudice to Sutter that might result from this procedural anomaly, and given the apparent complexity of the issues presented by the '10 Case, the Court will deny Oxford's motion to dismiss. In accord with standard federal practice regarding disputes under Section 10 of the FAA, the Court will grant the parties' 30 days to file motions to vacate/confirm Barrett's Procedural Order No. 19. Those motions, if any, can then be fully and fairly briefed pursuant to the Local Civil Rules that govern litigation in this Court.

### III. CONCLUSION

For the foregoing reasons, Sutter's motions to dismiss and to remand in the '05 and '10

Cases will be DENIED; Oxford's motion to vacate Barrett's Order No. 18 will be DENIED; Sutter's cross-motion to confirm Barrett's Order No. 18 will be GRANTED; Oxford's motion to dismiss in the '10 Case will be DENIED, and the Court will grant the parties' 30 days to file motions to vacate/confirm Barrett's Procedural Order No. 19 in the '10 Case.  Finally, in light of the foregoing decisions, the Court will order the Clerk of the Court to CLOSE the '05 Case.  An appropriate form of order accompanies this memorandum opinion.

Dated:  February 22, 2011

      /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.